UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KWOK SZE, o/b/o himself and
all others similarly situated,

                                                                9:13-cv-534

                  Plaintiffs,                  (GLS/DEP)

                      v.

ANTHONY ANNUCCI et al.,

                  Defendants.
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Frank Raimond              FRANK V. RAIMOND, ESQ.
305 Broadway, 14th Floor
New York, NY 10007

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN     MICHAEL G. MCCARTIN
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Kwok Sze commenced this action pursuant to 42 U.S.C.

§ 1983 against defendants[1] alleging individual constitutional torts as well claims on behalf of himself and those similarly situated for a denial of access to courts and a violation of the First Amendment. (2d Am. Compl., Dkt. No. 60.) Pending is Sze's motion to certify a class on his First Amendment and access to courts claims, (Dkt. No. 90), and defendants' cross motion for partial summary judgment on the same claims, (Dkt. No. 94). For the reasons that follow, defendants motion is granted and Sze's motion is denied as moot.

## II. Background

### A. Facts[2]

At all relevant times, Sze was an inmate with the New York State Department of Corrections and Community Supervision (DOCCS) where he was housed at Clinton, Franklin, Greene, and Mid-State Correctional

---

[1] Defendants are Anthony Annucci, Brian Fischer, Arthur Dirie, Philip Heath, Hearing Officer Davis, Hearing Officer Lamora, Hearing Officer Irwin, Hearing Officer Gutwein, Hearing Officer Overbaugh, Hearing Officer Sawchak, Correction Officer Redl, Correction Officer Walantus, Correction Officer Martin, Correction Officer Harris, Correction Officer Hill, Correction Officer Bidwell, Correction Officer Dysard, Deputy Superintendent Joslyn, Correction Officer Harringan, Correction Officer Merrill, Correction Officer Thompson, Clinton Correction Officer Does 1-30, Franklin Correction Officer Does 1-30, and Greene Correction Officer Does 1-30. (2d Am. Compl., Dkt. No. 60.)

[2] Unless otherwise noted, the facts are not disputed. Also, as highlighted by defendants, (Dkt. No. 103 at 3), Sze's failure to comply with Local Rule 7.1(a)(3) by admitting or denying each of the paragraphs in defendants' statement of material facts, (*compare* Dkt. No. 94, Attach. 20, *with* Dkt. No. 99), is not without consequences. Defendants' properly supported and uncontroverted facts are therefore deemed admitted.

2

Facilities. (Defs.' Statement of Material Facts (SMF) ¶¶ 1-2, Dkt. No. 94, Attach. 20.) Sze had at least five attorneys who represented him in civil and post-conviction criminal matters. (Dkt. No. 94, Attach. 5 at 32-33, 48-56.) On over ten occasions, Sze used DOCCS' monitored telephone lines to speak with his attorneys. (*Id.* ¶ 9.) Sze was aware that DOCCS could be listening to his calls. (*Id.*)

DOCCS operates an agency-wide telephone program for inmates to contact their friends and family, which is colloquially referred to as the "call home" program. (Dkt. No. 94, Attach. 6.) Pursuant to agency policy, DOCCS monitors all inmate telephone calls made under this program. (*Id.* ¶ III.C.) Signs in English and Spanish are placed next to the telephones notifying inmates that their phone calls are electronically monitored. (Defs.' SMF ¶¶ 7-8.) DOCCS also has an agency-wide policy to cease monitoring calls if it learned that the inmate was speaking with his or her attorney. (*Id.* ¶¶ 5-6.)

In addition to the call home program, inmates could request to speak with their attorneys on unmonitored telephone lines. (*Id.* ¶ 10.) The method to obtain permission to use the unmonitored lines varied at each facility. (*Id.* ¶ 11.) By March 8, 2012, DOCCS instituted a policy to build

3

booths around the telephones with unmonitored lines. (*Id.* ¶ 20.) Starting in May 2015, DOCCS revised its policy and limited the time inmates could speak with their attorneys on unmonitored lines to one thirty minute session every thirty days. (*Id.* ¶ 23.) Inmates could receive additional time if they or their attorneys attained a court order or made a showing of special need to DOCCS' Office of Counsel. (*Id.*)

In total, Sze used DOCCS' unmonitored telephone lines for approximately thirty-three hours to speak with his various attorneys. (*Id.* ¶¶ 12, 14.) Before Sze commenced this lawsuit, neither he nor any of his attorneys filed grievances complaining about his allotted telephone time or any misconduct by DOCCS regarding the unmonitored telephone lines. (*Id.* ¶ 13.) Sze could freely meet with his attorneys in person, (*id.* ¶ 17), however, testified that he opted not to because he did not want to incur the expense, (*id.* ¶ 18). In addition, Sze could mail his attorneys letters, which he did on an "almost weekly basis." (*Id.* ¶ 19.)

B. **Procedural History**

On May 8, 2013, Sze commenced this action. (Compl., Dkt. No. 1.) He subsequently filed an amended complaint, (Dkt. No. 37); some defendants answered, and others moved to dismiss pre-answer, (Dkt.

4

Nos. 38-39). The court granted in part and denied in part defendants'
motion. (Dkt. No. 50.) Thereafter, Sze filed a second amended complaint,
(Dkt. No. 60), which defendants answered, (Dkt. Nos. 65, 73). Sze then
filed the pending motion to certify a class, (Dkt. No. 90), and defendants
filed the pending motion for partial summary judgment, (Dkt. No. 94).

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well
established and will not be repeated here. For a full discussion of the
standard, the court refers the parties to its decision in *Wagner v. Swarts*,
827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.
Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

Defendants argue that they are entitled to judgment at law because
Sze fails to raise a material question of fact on his access to courts claim.[3]
(Dkt. No. 94, Attach. 21 at 20-23.) Sze contends that he has a First
Amendment right to use prison telephones and defendants have failed to
demonstrate that their policy limiting unmonitored telephone calls is a valid

---

[3] Defendants also argue that their motion should be granted on other grounds, but the court does not reach those arguments in light of its decision on this dispositive issue.

restriction on his free speech. (Dkt. No. 99 at 7-11.)

While the precise source of constitutional protection remains unsettled, *see Christopher v. Harbury*, 536 U.S. 403, 415 & n. 12 (2002), inmates have a right to access the courts, *see Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004). Challenges to a prison's telephone policy may also implicate, as it does in this case, an inmate's right to free speech. *See generally Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). In any event, "[c]ourts considering prison telephone restrictions have agreed that an inmate has no right to unlimited telephone use." *Pitsley v. Ricks*, No. 96-CV-0372, 2000 WL 362023, at *4 (N.D.N.Y. Mar. 31, 2000).

Whether analyzed as an access to courts or free speech claim, courts have held that restrictions on inmate telephone use present no constitutional violation if inmates have an alternative method of communication. *See McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *23 (S.D.N.Y. Mar. 31, 2016) (analyzing a challenge to inmate telephone use as an access to courts claim); *Ahlers v. Townsend,* No. 9:12-CV-0575, 2014 WL 4365277, at *5 (N.D.N.Y. Aug. 28, 2014) (analyzing a challenge to inmate telephone use as a free speech and access to courts claim). This rule applies with equal force to privileged

communications between inmates and their attorneys.  *See Groenow v. Williams*, No. 13 Civ. 3961, 2014 WL 941276, at *7 (S.D.N.Y. Mar. 11, 2014) (report and recommendation) (finding that an inmate must "be prohibited from communicating with his attorney by all available means" to demonstrate a constitutional violation); *Henry v. Davis*, No. 10 Civ. 7575, 2011 WL 3295986, at *2-3 (S.D.N.Y. Aug. 1, 2011) (holding that "[p]hone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, particularly with counsel"), *adopting report and recommendation*, 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011).

Here, the facts demonstrate that Sze had and used alternative means to communicate with his attorneys.  Sze could entertain personal visits from his attorneys.  (Defs.' SMF ¶ 17.)  Sze wrote to and received correspondence from his attorneys.  (*Id.* ¶ 18.)  Sze could even speak with his attorneys on the unmonitored telephone lines.  (*Id.* ¶ 23.)  In fact, he spent over thirty-three hours doing just that.  (*Id.* ¶ 12, 14.)  As Sze had other avenues of communication with his attorneys readily available to him, DOCCS' restriction on his use of the unmonitored lines does not present a constitutional question.  *See Groenow*, 2014 WL 941276 at *7; *Henry*,

7

2011 WL 3295986 at *2-3.

Nor does Sze raise a constitutional issue to the extent that he challenges the monitoring of his conversations with his attorneys on the "call home" line. Again, Sze could communicate with his counsel by personal visit, letter, or unmonitored telephone line. (Defs.' SMF ¶¶ 12, 14, 17-18, 23.) DOCCS simply did not "prohibit[ Sze] from communicating with his attorney[s] by all available means." *Groenow*, 2014 WL 941276 at *7. What is more is that DOCCS had a policy to stop monitoring conversations once it was discovered that an inmate was speaking with his or her attorney even though inmates were on notice of DOCCS' monitoring policy. (Defs.' SMF ¶¶ 5-7.) Consequently, Sze fails to raise any constitutional question and defendants are entitled to summary judgment on this claim.

Because the court grants summary judgment on Sze's individual claim, his motion for class certification on this claim is necessarily moot. *See Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 WL 764199, at *7 (E.D.N.Y. Mar. 5, 2012) ("The unnamed class members are not technically part of the action until the court has certified the class, therefore, once the named plaintiff['s] claims are dismissed, there is no one who has a justiciable claim that may be asserted.") (internal quotation

marks and citation omitted); *see also Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("[I]f no motion to certify has been filed (perhaps if it has been filed but not acted on), the case is not yet a class action and so a dismissal of the named plaintiff['s] claims should end the case."). For this reason, Sze's motion is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for partial summary judgment (Dkt. No. 94) is **GRANTED** and Sze's first and second causes of action (Am. Compl. ¶¶ 117-26) are **DISMISSED**; and it is further

**ORDERED** that Sze's motion to certify a class (Dkt No. 90) is **DENIED AS MOOT**; and it is further

**ORDERED** that the parties contact Magistrate Judge David E. Peebles to schedule further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 7, 2017
Albany, New York

_____
Gary L. Sharpe
U.S. District Judge